[840 NYS2d 328]

Richard N. Foster, Appellant, v Bruce Kovner et al., Respondents.

First Department, July 19, 2007

### APPEARANCES OF COUNSEL

*Cravath, Swaine & Moore LLP*, New York City (*John E. Beerbower* of counsel), for appellant.

*Kasowitz, Benson, Torres & Friedman LLP*, New York City (*Marc E. Kasowitz, Daniel R. Benson, Brian S. Kaplan* and *Allison S. Weiss* of counsel), for respondents.

### OPINION OF THE COURT

ANDRIAS, J.P.

Plaintiff alleges breach of an oral compensation agreement, breach of an oral joint venture or partnership agreement, unjust enrichment in quantum meruit, promissory estoppel, and breach of fiduciary duty. He claims to have personally raised from various sources $800 million of the $1 billion for defendant Caxton Health Holdings (CHH) by December 31, 2004. Defendants moved to dismiss on the grounds that the March 18, 2004 letter to plaintiff from CHH, which included a list of open issues, disproved his claims, which were in any event barred by the statute of frauds (General Obligations Law § 5-701 [a] [1]) and were otherwise insufficient. The question is whether this alleged joint venture agreement was capable of being performed within one year.

In the decision and order appealed from, the motion court dismissed the breach of contract claims as barred by the statute of frauds, and the unjust enrichment, promissory estoppel and breach of fiduciary duty claims as duplicative causes of action that were dependent upon oral agreements otherwise barred by the statute of frauds. As to the unjust enrichment claim, the court found that plaintiff had been compensated for his services.

In the first cause of action, plaintiff alleges that defendants breached an oral compensation agreement entered on March 11,

2004, "by refusing . . . his promised equity interest in CHH and ceasing payment of the $1,000,000 per year that was promised" in consideration for his work as the corporation's CEO (2006 NY Slip Op 30201[U], *8-9). In the second, plaintiff alleges that defendants breached a joint venture or partnership agreement entered on March 11, 2004 by "refusing . . . his equity interest in the joint venture and ceasing payment of the promised $1,000,000 per year" (*id.* at *11). While the court found that the March 18, 2004 letter did not preclude these claims and that "Foster sufficiently alleges the existence of an oral agreement" it nevertheless dismissed them as barred by the statute of frauds because "full performance of its terms is not capable within a one-year period" (*id.* at *8, 9). The court further found that although plaintiff argues his measure of compensation was fixed and defendants' obligation of payment was thus capable of performance within one year, he admits that defendants would have to continue annual compensation payments to him for the duration of the joint venture that has already exceeded one year. Therefore, the court found, "pursuant to the oral agreement, the compensation that Foster seeks from defendants requires defendants to continue performance for a period exceeding one year and Foster's allegation of unilateral performance does not take the agreement out of the Statute of Frauds" (*id.* at *9-10).

As to plaintiff's argument that his claim for the 10% equity should survive because it became due during the year he had performed, the court found that

> "Foster's performance under the terms of the alleged joint venture agreement was to exceed a one-year period. Therefore, the alleged oral agreement for 10% equity in exchange for Foster's contribution of 'business concepts,' 'labor,' 'personal services' and 'managing the day-to-day operations of CHH,' was not capable of being performed within one year" (*id.* at *10).

Insofar as plaintiff argued that he had performed his obligations under the joint venture agreement within one year, the court found that "the complaint's allegations support the inference that his obligations under the alleged joint venture agreement were to continue beyond a one year period" inasmuch as the complaint alleges the parties had discussed that "CHH would take at least two to three years to get off the ground" and that "during the first two years of this formative stage, the

enterprise would not be expected to show a profit" (*id.* at *11). The court further found that the complaint alleges that part of the agreement to enter into the joint venture included plaintiff's promise to "assume major responsibilities critical to the development and eventual success of CHH, in addition to managing the day-to-day operations of CHH" and that plaintiff "continued to perform these duties, pursuant to the alleged oral joint venture agreement, beyond the first twelve months of CHH's operation. Therefore, the alleged joint venture agreement, by its terms, could not be performed within one year" (*id.* at *11-12).

Such holding, however, ignores the holding in *D & N Boening v Kirsch Beverages* (63 NY2d 449, 454 [1984]) that "[t]he question is not what the probable, or *expected*, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year" (emphasis added).

The purpose of General Obligations Law § 5-701 (a) (1) is "to prevent fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury" (*D & N Boening*, 63 NY2d at 453). Under section 5-701 (a) (1), an agreement is void if, by its terms, it "is not to be performed within one year from the making thereof" unless it "or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith" (*see generally Cron v Hargro Fabrics*, 91 NY2d 362 [1998]). The statute encompasses only those agreements which, by their terms, "have absolutely no possibility in fact and law of full performance within one year" (*D & N Boening*, 63 NY2d at 454; *North Shore Bottling Co. v Schmidt & Sons*, 22 NY2d 171, 175-176 [1968]). It matters not that completion of performance within one year may be unlikely or improbable. As aptly stated by Chief Judge Breitel in *Freedman v Chemical Constr. Corp.* (43 NY2d 260, 265 [1977]),

> "Subdivision 1 [of section 5-701 (a)] renders unenforceable an oral agreement which '[b]y its terms is not to be performed within one year from the making thereof'. True, as Chemical asserts, it was unlikely that Freedman's efforts to obtain the construction contract and Chemical's payment, due only upon completion of the plant, would occur within one year. In fact, Freedman admits it took over three years for his own performance and another six until the plant was built. It matters not, however, that it was unlikely or improbable that a

$41 million plant would be constructed within one year. The critical test, instead, is whether 'by its terms' the agreement is not to be performed within a year."

Further, the statute of frauds is generally inapplicable to an agreement to create a joint venture (*F.S. Intertrade Off. Prods. v Babina*, 199 AD2d 95, 96 [1993], *lv denied* 83 NY2d 757 [1994]) or partnership (*Prince v O'Brien*, 234 AD2d 12 [1996]; *Rella v McMahon*, 169 AD2d 555 [1991]). This is because, absent any definite term of duration, an oral agreement to form a partnership or joint venture for an indefinite period creates a partnership or joint venture at will (*see Shandell v Katz*, 95 AD2d 742, 743 [1983] [partnership at will may be dissolved, without liability for breach of contract, on a "moment's notice"]; *Alnwick v European Micro Holdings, Inc.*, 281 F Supp 2d 629, 644 [ED NY 2003] ["Where . . . there is no definite term of duration for the joint venture, it may be terminated at will"]).

Here, there was no definite duration for the joint venture. Insofar as the motion court relied on the fact that plaintiff alleged in the complaint that he, Kovner and Wilson (defendant principals of CCH) "expected that CHH would take at least two to three years to get off the ground" (2006 NY Slip Op 30201[U], *4) and that plaintiff continued to perform his duties beyond 12 months, CHH could be, and was in fact, established within one year. The complaint alleges that the oral agreement required defendants to compensate plaintiff for as long as the fund continued to exist, which tied payment to a specific event, i.e. the termination of the venture, which the parties controlled and which could have occurred within one year without either party breaching the agreement (*see Cron v Hargro Fabrics*, 91 NY2d 362 [1998], *supra*; *Hydro Invs. v Trafalgar Power*, 6 AD3d 882, 885 [2004] ["the oral agreement, as alleged by plaintiff, provides for distribution of plaintiff's 25% interest in the joint venture without regulating the time of performance and, thus, was capable of being performed within one year"]; *Zuccarini v Ziff-Davis Media*, 306 AD2d 404 [2003]).

As to defendants' argument that even if the contract claims are not barred by the statute of frauds, they should be dismissed because the March 18, 2004 letter confirms the parties never agreed on the material terms and "numerous, substantive issues" remained unresolved, including "the level of ownership to be acquired" and "the full details of [Foster's] compensation," the motion court correctly held that "[a]n agreement may exist

even where parties acknowledge that they intend to subsequently finalize the details of the agreement. (S*ee Richbell Info. Servs., Inc. v Jupiter Partners, LP,* 309 AD2d 288 [1st Dept 2003])." (2006 NY Slip Op 30201[U], *8.) Moreover, while defendants make a cogent argument that unlike *Richbell,* the parties here never reached an agreement on many of the essential terms, dismissal is unwarranted in the present procedural context inasmuch as "[u]nder CPLR 3211 (a) (1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (*Leon v Martinez,* 84 NY2d 83, 88 [1994]). The documentary evidence must resolve all factual issues and dispose of the plaintiff's claim as a matter of law (*Montes Corp. v Charles Freihofer Baking Co., Inc.,* 17 AD3d 330 [2005]; *Teitler v Pollack & Sons,* 288 AD2d 302 [2001]).

In *Richbell,* we noted that "it is asserted that notwithstanding the intent to hammer out details subsequently, the parties agreed to the joint venture itself, with the essential understanding of what each party's contribution and potential exposure would be" (309 AD2d at 298). This is exactly what plaintiff alleges in the complaint, which caused the motion court to find that in the context of a motion to dismiss, "accepting plaintiff's allegations as true, Foster sufficiently alleges the existence of an oral agreement" (2006 NY Slip Op 30201[U], *8). Indeed, CHH was formed as alleged by plaintiff. The $1 billion contemplated was raised, as previously noted, primarily by plaintiff. The March 18, 2004 letter stated that CHH "would like to confirm our agreement concerning the following" (*id.* at *5), referring to plaintiff's $1 million salary commencing on April 30, 2004 ($500,000 plus a $500,000 draw), to be paid over 16 months. It is also clear from that letter that an equity interest was anticipated. The list of issues sought to fine-tune certain points, but did not refute that plaintiff was entitled to a share of equity in the corporation and his $1 million annual salary. Accordingly, it cannot be said, as a matter of law, that the documentary evidence conclusively establishes the parties merely had an agreement to agree, although defendants may later succeed on this argument on summary judgment or at trial.

In the third cause of action, plaintiff alleges that defendants have been unjustly enriched by his contributions to CHH and the funds he raised, and that it is "against equity and good conscience to permit [them] to retain that portion of the monies they owe to [him] in exchange for his original business ideas,

work, labor, services and personal business contacts" (*id.* at *12). As the measure of damages, plaintiff seeks the same amount he claimed in his contract claims for the entirety of his work in implementing the venture or, in the alternative, compensation for his specific activities of raising investment money for the fund based on alleged industry standards.

The court found that because the allegations underlying this claim could not support plaintiff's breach of contract claims, they could not serve as a basis for an unjust enrichment claim. However, inasmuch as the breach of contract claims are not barred by the statute of frauds, this rationale is inapplicable and the unjust enrichment claim should be sustained as an alternative basis for relief in the event it is determined that there was no oral agreement (*see Zuccarini*, 306 AD2d at 405 [if "there is a bona fide dispute as to the existence of a contract . . . a plaintiff may proceed upon a theory of quasi contract as well as contract"]; *see also Farash v Sykes Datatronics*, 59 NY2d 500, 503 [1983]). To the extent the court also found that "defendants did adequately compensate plaintiff for the benefit he conferred, so plaintiff has no cause of action for unjust enrichment" (2006 NY Slip Op 30201[U], *13), the adequacy of the compensation cannot be resolved on a motion to dismiss, in that even if plaintiff received his salary, he did not receive the equity he was allegedly promised.

In the fourth cause of action, plaintiff alleges that he relied to his detriment upon Kovner's "clear and unambiguous promises that [he] would receive a 10% equity interest in CHH and annual payments of $1,000,000," and that he "forewent nine months of his salary and share of McKinse[y's] profits" when he went to work for CHH (*id.* at *15). The court held that "[t]he allegation that Foster relied upon promises of continued compensation and equity interest cannot remedy the legally insufficient breach of contract claims" (*id.* at *16). While noting that a claim of promissory estoppel will allow plaintiff to circumvent the statute of frauds if there is at least an allegation of "infliction of unconscionable injury on plaintiff as a result of any reliance he placed on defendant's alleged promises" (*id.*, quoting *Melwani v Jain*, 281 AD2d 276, 277 [2001]), the court found that the standard was not met because there are no allegations of "unconscionable injury" in the complaint, and the conduct plaintiff complains of is not sufficiently egregious. Again, however, inasmuch as the statute of frauds does not bar the breach of contract claims, this reasoning would no longer be

applicable and the promissory estoppel claim should be reinstated.

Finally, in his fifth cause of action, plaintiff alleges that by virtue of their status as partners or joint venturers, a fiduciary relationship existed among the parties, which defendants breached when they induced him to contribute his vision, experience, skills, connections and efforts to the venture by making promises of compensation that they never intended to keep. Noting that a court will dismiss as duplicative a cause of action for breach of fiduciary duty based entirely on allegations supporting a breach of contract claim, even if that claim is unenforceable, the court found that because the claim of a joint venture or partnership failed to satisfy the statute of frauds, this left only allegations of an arm's length business relationship, which does not give rise to a fiduciary obligation. Again, inasmuch as the statute of frauds did not bar the breach of joint venture agreement claim, this rationale is inapplicable and the breach of fiduciary duty claim may stand.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered October 6, 2006, which, to the extent appealed from, granted defendants' motion pursuant to CPLR 3211 dismissing plaintiff's first, second, third, fourth and fifth causes of action, should be reversed, on the law, without costs, that portion of defendants' motion denied, and those causes of action reinstated.

SULLIVAN, WILLIAMS, SWEENY and MALONE, JJ., concur.

Order, Supreme Court, New York County, entered October 6, 2006, reversed, on the law, without costs, defendants' motion to dismiss plaintiff's first, second, third, fourth and fifth causes of action denied, and said causes of action reinstated.